**In re Stephen Mark YOUNG, Debtor.**

**Centier Bank, Plaintiff,**

v.

**Stephen Mark Young, Defendant.**

**Bankruptcy No. 08–24099 JPK.**
**Adversary No. 09–2077.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division.

Jan. 21, 2010.

Greg A. Bouwer, Esq. and James M. Yannakopoulos, Esq., Koransky & Bouwer, P.C., Dyer, IN, for the Plaintiff Centier Bank.

Daniel L. Freeland, Esq., Highland, IN, for the Defendant, Stephen Mark Young.

## MEMORANDUM AND DECISION

J. PHILIP KLINGEBERGER, Bankruptcy Judge.

This adversary proceeding was initiated by a complaint filed by Centier Bank

("Centier") on March 9, 2009, which designated "Stephen Mark Young a/k/a Harvest Homes ("Young")" as the defendant. On April 13, 2009, Young filed an answer to the complaint which included certain designated affirmative defenses. The parties then filed what the court will describe as skirmishing motions.[1] In order to sort out the case, the court conducted a pre-trial conference on July 10, 2009, which resulted in the following order:

> Docket Entry: Pre–Trial held on 7/10/09 RE: related document(s)[1]Complaint filed by Plaintiff Centier Bank. APPEARANCES: Atty. Paul Poracky on behalf of Plaintiff. It is ORDERED that the plaintiff shall file an amended complaint—designating each separate statutory basis for requested relief as a separate count—by August 7, 2009. The defendant shall file an answer or other response to the amended complaint by 8/28/09. The court will schedule a preliminary pre-trial conference upon the closing of these pleadings. The motions filed as record entries 6, 8 and 10 are mooted by this order's direction to file an amended complaint. In stating affirmative defenses the defendant is advised to review *Heller Financial, Inc. vs. Midwhey Powder Co., Inc.*, 883 F.2nd 1286 [headnote 16](7th Cir. 1989).(pg)

Pursuant to the court's order, Centier filed an amended complaint on August 7, 2009, which was met by Young's motion to dismiss the complaint pursuant to Fed. R.Bankr.P. 7012(b)/Fed.R.Bankr.P. 12(b)(6) filed on August 28, 2009. This motion was accompanied by a supporting memorandum, as required by applicable rules. On September 28, 2009, Centier

filed a response to the motion to dismiss, and a memorandum in support of that response. At a preliminary pre-trial conference held on October 19, 2009, the court entered an order which stated that further proceedings in the case would be determined after the court's determination of Young's motion to dismiss.

This adversary proceeding is now before the court on Young's motion to dismiss filed on August 28, 2009, and Centier's response to that motion.

The court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a) and (b), and N.D.Ind.L.R. 200.1(a). The contested matter is a "core" proceeding under 28 U.S.C. § 157(b)(2)(I).

In its response to Young's motion to dismiss, Centier has conceded dismissal of Count IV of the amended complaint. The court therefore determines that Count IV of the amended complaint is dismissed, with prejudice.

Young contends in part that Counts II and III of the amended complaint assert claims which were not presented in the original complaint, and thus are barred by the deadline for filing of a complaint asserting grounds for exception to discharge under 11 U.S.C. § 523(c)(1)/ Fed.R.Bankr.P. 4007(c). Centier counters that all claims stated in the amended complaint relate back to the date of the filing of the original complaint, and are thus not time-barred.

 Fed.R.Civ.P. 15(c)(1)(B)—the provision which is applicable to the parties' arguments—states the following:

(c) Relation Back of Amendments.

---

**1.** By the term "skirmishing" motions, the court means to imply that these parties, as is relatively common in similar cases before the court, asserted concepts of dismissal and striking that had very little to do with the core action and/or the substance of matters raised by each of the parties in their respective pleadings. Skirmishes prolong the conflict and raise the costs of war, without meaningfully joining the battle.

(1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:

. . .

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading;

As stated in *Bularz v. Prudential Insurance Company of America,* 93 F.3d 372, 379 (7th Cir.1996):

Under Federal Rule of Civil Procedure 15(c)(2), an amended complaint relates back to the date of the original pleading when "the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." *Id.* In general, relation back is permitted under Rule 15(c)(2) where an amended complaint asserts a new claim on the basis of the same core of facts, but involving a different substantive legal theory than that advanced in the original pleading. *Donnelly v. Yellow Freight System, Inc.,* 874 F.2d 402, 410 (7th Cir.1989), *aff'd. on other grounds,* 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990); *see also Worthington v. Wilson,* 8 F.3d 1253, 1256 (7th Cir.1993) (quoting *Wood v. Worachek,* 618 F.2d 1225, 1229 (7th Cir.1980)); *Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1543 (8th Cir.1996) (collecting cases). Thus, a new substantive claim that would otherwise be time-barred relates back to the date of the original pleading, provided the new claim stems from the same "conduct, transaction, or occurrence" as was alleged in the original complaint; for relation back to apply, there is no additional requirement that the claim be based on an identical theory of recovery. *E.g., Donnelly,* 874

F.2d at 410; *Federal Deposit Ins. Corp. v. Bennett,* 898 F.2d 477, 479–80 (5th Cir.1990).

The original complaint asserted—albeit inartfully—that certain actions of Young undertaken with respect to specified transactions gave rise to actions under 11 U.S.C. § 523(a)(2), § 523(a)(4) and § 523(a)(6). The specific transactions alleged to have given rise to these actions were identified in Count I of the original complaint as being the provision of multiple sworn statements to obtain release of funds. The amended complaint is based only in part upon the same transactions as was the original complaint. As Young noted in his memorandum, and as the court endorses, the standard by which "relation back" is to be judged was well-stated in *In re Austin Driveway Services, Inc.,* 179 B.R. 390, 395 (Bankr.D.Conn.1995), as follows:

Rule 15(c) is "to be liberally construed, particularly where an amendment does not 'allege a new cause of action but merely . . . make[s] defective allegations more definite and precise.'" *Siegel v. Converters Transp., Inc.,* 714 F.2d 213, 216 (2d Cir.1983) (per curiam) (quoting *Glint Factors, Inc. v. Schnapp,* 126 F.2d 207, 209 (2d Cir.1942)). "The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 150 n. 3, 104 S.Ct. 1723, 1725, n. 3, 80 L.Ed.2d 196 (1984) (per curiam). Thus, the relation back analysis focuses on the notice given by the general fact situation stated in the original pleading. *Rosenberg v. Martin,* 478 F.2d 520, 526 (2d Cir.), *cert. denied,* 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973); *see Brandt v. Gerardo (In re Gerardo Leas-*

*ing, Inc.*), 173 B.R. 379, 388 (Bankr. N.D.Ill.1994) ("The most important factor in determining whether to allow an amended complaint to relate back to the date of the original filing is whether the original complaint provided the defendant with sufficient notice of what must be defended against in the amended pleading."). Put another way, a new cause of action otherwise barred by the statute of limitations may be asserted by an amendment that relies upon the same facts because the defendant is on notice that specific conduct, transactions, or occurrences allegedly support a claim against it so that relevant evidence should be preserved.

Both Count I of the original complaint and Count I of the amended complaint relate to construction draw transactions, identified in the original complaint and carried over into the amended complaint. However, Counts II and III of the amended complaint are premised upon documentation submitted, and representations made, prior to Centier's granting of loans in the first place and/or in a context other than construction draw submissions. The transactions and facts referenced in Count I of the original complaint and Counts II and III of the amended complaint are entirely different, in terms of both temporal and substantive elements. There is nothing in the original complaint which can be deemed to have placed Young on notice of the transactions which are the subjects of Counts II and III of the amended complaint. Therefore, Counts II and III of the amended complaint do not relate back to the time of filing of the original complaint, and the claims asserted in those two counts are time-barred by Fed.R.Bankr.P. 4007(c).

As is customary with motions to dismiss pursuant to Rule 12(b)(6) filed by defendants, much of Young's argument is devoted essentially to contentions that Centier has not proven its case on the face of the pleadings. As is customary with responses to Rule 12(b)(6) motions filed by plaintiffs, Centier has sought to elaborate upon the theories of its complaint in its responsive memorandum. Both parties have missed the point of Rule 12(b)(6), as construed by the United States Supreme Court. Amazingly, neither party has cited the presently applicable standard for review of complaints under Rule 12(b)(6) in relation to Rule 8(a) of the Federal Rules of Civil Procedure. The parties did a little better with respect to addressing the pleading requirements of Fed.R.Civ.P. 9(b), incorporated into adversary proceedings by Fed.R.Bankr.P. 7009.

Rule 12(b)(6), made applicable to adversary proceedings by Fed.R.Bankr.P. 7012(b), provides for the defense of "failure to state a claim upon which relief can be granted".

The decision of the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), now provides the definitive standard for allegations which must be provided in a complaint pursuant to Fed.R.Civ.P. 8(a) and the standards by which a complaint is measured under that rule in the face of a Rule 12(b)(6) motion. *Bell Atlantic Corp.* eschewed the longstanding formulation of *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)—that a complaint does not state a claim only if "no set of facts" could be postulated which would provide a ground for relief. The new standard is stated as follows:

> This case presents the antecedent question of what a plaintiff must plead in order to state a claim under § 1 of the Sherman Act. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in

order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.*; *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed.2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful in fact), see, *e.g., Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). (footnote omitted)

127 S.Ct. 1955, 1964–1965.

As the court stated in *Ashcroft v. Iqbal,* — U.S. —, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009), citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555–57, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007):

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [citation omitted] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [citation omitted] The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [citation omitted] Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " [citation omitted]

. . .

[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [citation omitted] ... [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. [citation omitted] Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. [citation omitted] But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." [citation omitted]

The foregoing are the basic standards by which the sufficiency of a complaint is judged against a challenge pursuant to Rule 12(b)(6). In addition, when allegation are fraud are made, or are necessary to be made to sustain a claim, Fed.R.Civ.P. 9(b) [made applicable to adversary proceedings by Fed.R.Bankr.P. 7009] comes into play. The rule states:

> **(b) Fraud or Mistake; Conditions of Mind.** In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Application of the requirements of Rule 9(b) is also straightforward. The manner in which compliance is to be had with the rule has been well-defined by the United States Court of Appeals for the Seventh Circuit. In *Graue Mill Development Corp. v. Colonial Bank & Trust Company of Chicago*, 927 F.2d 988, 992–93 (7th Cir. 1991), the following was stated:

> Graue Mill's second argument on appeal is that the district court erred in dismissing the RICO counts in its complaint for failure to allege predicate acts of fraud with sufficient specificity. The starting point for pleading fraud claims under RICO is Rule 9(b) of the Federal Rules of Civil Procedure. That rule states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with *particularity*." (emphasis added). Rule 9(b) effectively carves out an exception to the otherwise generally liberal pleading requirements under the Federal Rules. We read 9(b) to mean that RICO plaintiffs, like all other parties pleading fraud in federal court, must " 'state the time, place and content' " of the alleged communications perpetrating the fraud. *U.S. Textiles Inc. v. Anheu-*

*ser–Busch Cos.*, 911 F.2d 1261, 1268 n. 6 (7th Cir.1990) (quoting *New England Data Servs. Inc. v. Becher*, 829 F.2d 286, 291 (1st Cir.1987)); *see also Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir.1989). Most importantly, complaints charging fraud must sufficiently allege the defendant's fraudulent intent. *See Haroco v. American Nat'l Bank & Trust Co.*, 747 F.2d 384, 403 (7th Cir.1984), *aff'd on other grounds*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). "Cryptic statements" suggesting fraud are not enough; " '[m]ere allegations of fraud ..., averments to conditions of mind, or references to plans and schemes are too conclusional to satisfy the particularity requirements.' " *Flynn v. Merrick*, 881 F.2d 446, 449 (7th Cir.1989) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985)). Rather, pleadings must state the "specific content of the false representations as well as the identities of the parties to the misrepresentation." *Moore*, 885 F.2d at 540; *see also Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 818 (7th Cir.1987) (complaint which "[did] not identify a single [fraudulent] statement ... or specify why that statement [was] fraudulent" failed to satisfy the requirements of Rule 9(b)).

To similar effect is the following statement in *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 777 (7th Cir.1994):

> Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The rule is said to serve three main purposes: (1) protecting a defendant's reputation from harm; (2) minimizing "strike suits" and "fishing expeditions"; and (3) providing notice of the claim to the adverse party. *See Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir.1992); *DiVittorio v. Equidyne Extractive Indus.*,

*Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987). Although some have questioned Rule 9(b)'s effectiveness in serving these purposes, the caselaw and commentary agree that the reference to "circumstances" in the rule requires "the plaintiff to state 'the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Uni*Quality*, 974 F.2d at 923 (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir.1992)); *see also Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir.1992) (stating that in a RICO action "the complaint must, at a minimum, describe the predicate acts with some specificity and 'state the time, place, and content of the alleged communications perpetrating the fraud'") (quoting *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 992 (7th Cir.1991)); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.) (stating that Rule 9(b) "particularity" means "the who, what, when, where, and how: the first paragraph of any newspaper story"), *cert. denied*, 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990); 5 Wright & Miller, *supra*, § 1297, at 590. (footnote omitted)

This interpretation of Rule 9(b) has been consistently applied by the United States Court of Appeals for the Seventh Circuit, and continues to be so applied. As stated in *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*, 536 F.3d 663, 669 (7th Cir. 2008):

Despite its use of inartful terminology, the district court properly dismissed the plaintiffs' fraud claims for failure to state with particularity "who made the fraudulent statement, when the fraudulent statement was made, and how the fraudulent statement was made." *Id.* at *3 [669]. The district court did not require the complaint to provide actual evidence of the claims; it merely required that the claims be pleaded with the requisite particularity. *See id.* Moreover, the district court correctly determined that the complaint failed to plead with particularity the who, when and how of the alleged frauds, all of which are required by Rule 9(b) for allegations of fraud. *See Gen. Elec. Capital*, 128 F.3d at 1078; *DiLeo*, 901 F.2d at 627. The district court therefore properly dismissed the fraud counts for failure to comply with Rule 9(b). (footnote omitted)

The foregoing are the criteria against which the sufficiency of the complaint is to be judged. To apply those criteria, however, it is necessary to determine the elements of the causes of action sought to be asserted by the complaint, and to compare those elements with the allegations of the complaint. Both parties have devoted an extensive amount of writing to their respective contentions as to the law to be applied with respect to actions under 11 U.S.C. § 523(a)(2), § 523(a)(4) and § 523(a)(6). Unfortunately, neither of the parties addressed cases decided by this court which specifically designate the elements necessary to sustain an action under each of the foregoing statutes.[2]

**2.** These parties are not alone in omissions of this nature. It is frustrating to the court that parties who submit legal memoranda to the court many times fail to discover in their research cases of this court which definitively set forth the standards which the court will

apply to a particular action. That would seem to be a logical starting point in any research project, but instead many parties cite a plethora of cases from courts of appeal other than the Seventh Circuit and from other jurisdictions, when all the while there is a

In *In re Hostetter*, 320 B.R. 674 (Bankr.N.D.Ind.2005), this court set forth the elements of a cause of action which it will apply to actions under 11 U.S.C. § 523(a)(2)(A). While these elements were primarily developed with respect to actions under that statute premised upon "false pretenses" or "a false representation", the elements also have applicability to an action under that section based upon "actual fraud". In *Hostetter*, the following was stated as to the base elements for an action under 11 U.S.C. § 523(a)(2)(A):

Although the precise formulation and specification of the number of elements varies from decision to decision, in order to sustain a *prima facie* case of fraud under § 523(a)(2)(A), courts have traditionally required a creditor to establish that: (1) the debtor made a representation to the creditor; (2) at the time of the representation, the debtor knew it to be false or the representation was made with such reckless disregard for the truth as to constitute willful misrepresentation; (3) the debtor made the representation with the intent and purpose of deceiving the creditor; (4) the creditor relied on the representation resulting in a loss to the creditor; and (5) the creditor's reliance was justifiable;[FN5] *In re Sheridan*, 57 F.3d 627, 635 (7th Cir. 1995); *Mayer v. Spanel Int'l, Ltd. (In re Mayer)*, 51 F.3d 670, 673, 676 (7th Cir.), *cert. denied*, 516 U.S. 1008, 116 S.Ct. 563, 133 L.Ed.2d 488 (1995); *In re Maurice*, 21 F.3d 767, 774 (7th Cir.1994). The creditor must prove each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111

S.Ct. 654, 661, 112 L.Ed.2d 755 (1991); *In re Bero*, 110 F.3d 462, 465 (7th Cir. 1997). Finally, "exceptions to discharge are to be construed strictly against a creditor and in favor of the debtor." *In re Scarlata*, 979 F.2d 521, 524 (7th Cir. 1992), reh. en banc den.1993; *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir.1985).

---

FN5. In *Field v. Mans*, 516 U.S. 59, 70, 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995), the Supreme Court held that a creditor's reliance need only be justifiable, not reasonable.

320 B.R. at 681. The court further delineated the nature of the representation necessary for sustaining a § 523(a)(2)(A) action, as follows:

The bottom line is that the defendant must have made the representation of the promise to pay with the intent and purpose of deceiving the creditor; i.e., intentional/actual fraud. As eloquently stated by the Honorable Kent Lindquist:

This finding of fact as to intention will obviously have to be determined by circumstantial evidence in most cases as direct evidence of the Defendant's state of mind at the time of purchase is seldom expressly indicated. Although this is certainly a difficult task, it is no greater a task than any other cause of action that includes intent or state of mind as a necessary element. And the existence of fraud may be inferred if the totality of the circumstances present a picture of deceptive conduct by the Debtor which indicates he intended to deceive or cheat the creditor. *In re Fenninger*, 49 B.R.

definitive case in this Division which addresses the parties' contentions. Perhaps this court's research method is antiquated, but it would seem that the order of researching to determine law which any court might apply to a specific issue would be: first, decisions of the court itself; second, decisions of the United States Supreme Court; third, decisions of the United States Court of Appeals for the Seventh Circuit; fourth, decisions of the United States District Court for the Northern District of Indiana; fifth, decisions of other United States Courts of Appeal; last, decisions of United States District Courts and United States Bankruptcy Courts in venues other than this court.

307, 310, *supra*; *In re Taylor*, 49 B.R. 849, 851, *supra*. The Court may logically infer this intent not to pay from the relevant facts surrounding each particular case. *See, In re Kimzey*, 761 F.2d 421, 424, supra. And a person's intent, his state of mind, has been long recognized as capable of ascertainment and a statement of present intention is deemed a statement of a material existing fact sufficient to support a fraud action. *In re Pannell*, 27 B.R. 298, 302 (Bankr. E.D.N.Y.1983).

*In re Faulk*, 69 B.R. 743, 755 (Bankr. N.D.Ind.1986).

320 B.R. at 684–685. For the purposes of Rule 9(b) with respect to actions premised upon "false pretenses" or "actual fraud", the elements do not differ much from the foregoing. In the court's view, an action for "false pretenses" under § 523(a)(2)(A) differs from an action based upon "false representation" only in the nature of the predicate conduct giving rise to the fraud, i.e., the creation of an appearance of circumstances as contrasted to an actual statement regarding circumstances. The concept of "actual fraud" is a bit more difficult to delineate, but again, that action is premised upon fraudulent conduct, undertaken with the intent and purpose of deceiving another, upon which a creditor justifiably relied, resulting in a loss to the creditor.

In *In re Tsikouris*, 340 B.R. 604 (Bankr.N.D.Ind.2006), this court addressed its analysis of the concept of "fiduciary capacity" under 11 U.S.C. § 523(a)(4). In doing so, the court sought to reconcile the somewhat conflicting decisions of the United States Court of Appeals for the Seventh Circuit with respect to this concept. Certain forms of a "fiduciary capacity" have been relatively well-defined by the case of *In the Matter of Marchiando*, 13 F.3d 1111 (7th Cir.1994). This court commented on *Marchiando*'s analysis as follows:

The teaching of *Marchiando* is not only that a statutory or contractual designation of an individual as a "trustee" or "fiduciary" has no real relevance to the determination of "fiduciary capacity" under § 523(a)(4). The primary lesson to be learned from the case is that there must be a "res" in existence *before* the designated "fiduciary" relationship truly arises. In this case, the only "res" there is arose only when Tsikouris did not make payments to the union benefit plans *after* the amount of the required payment was determined. Thus, because there was no "res" prior to that time, Tsikouris did not act in a "fiduciary capacity" in any manner with respect to the "debt" which the Plaintiffs seek to except from his discharge.

340 B.R. at 614. The most problematic Seventh Circuit case with respect to a relationship which constitutes a "fiduciary" relationship is *In re Frain*, 230 F.3d 1014 (7th Cir.2000). This court addressed *Frain*, and synopsized its concept of a "fiduciary capacity" as follows:

In this Court's view, *Frain* is based upon the premise that a "fiduciary" relationship existed between Frain and his two fellow shareholders—much as would be the case in the relationship among a managing partner and limited partners in a partnership—and that this relationship rose to the level of the "fiduciary capacity" required by 11 U.S.C. § 523(a)(4) *because of* the structuring of the relationship in a way which provided Frain with total control over the *focus of* the fiduciary relationship: existing assets of the corporation, and the manner in which the corporation would disburse monies on its obligations. Contrast that to the instant case. Under the princi-

ples of *Marchiando,* no possible "fiduciary" relationship arose in this case until Tsikouris failed to pay the "employer's component" obligations to the union benefit plans: the Plaintiffs had no interest of any kind in the proceeds or assets of Tsikouris' business until the debt asserted in this case arose, and when it did, their interest was merely a debt, as was true in *Marchiando.* Additionally, the "ascendancy of power/position" critical to the analysis in *Frain* does not exist at all here. The union benefit plans are associated with the union, and due to that association are far more powerful than is a small sole proprietorship which employs union members in its business. Unions have the ability to totally immobilize an employer who does not fulfill the terms of a collective bargaining agreement, and for the Plaintiffs in this case to suggest that Tsikouris was in a position of ascendant power over a trade union and its associated employee benefit plans borders on the preposterous. As the foregoing cases establish, a critical component of a fiduciary relationship within the scope of 11 U.S.C. § 523(a)(4) is a *res* which exists as the focus of the relationship, much as would be the circumstance in the case of an express trust created to manage property deposited into the trust at the inception of the fiduciary relationship; *See, Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir.1987). A mere promise to pay a debt when circumstances giving rise to the obligation to pay come into existence, made by an individual to another person or entity of equal or superior standing, is not within the ambit of 11 U.S.C. § 523(a)(4); *In re Woldman,* 92 F.3d 546 (7th Cir.1996). Even if a statute or ordinance labels a relationship to be a "fiduciary" relationship, that label has no consequence under § 523(a)(4) unless there is an existing *res* which is mandated by law to be the subject of the labeled relationship; *In re McGee,* 353 F.3d 537 (7th Cir.2003) [holding that a municipal ordinance which required the deposit of security deposits paid by tenants to a landlord into a segregated account, created a "fiduciary" relationship under 11 U.S.C. § 523(a)(4), in specifically delineated contrast to the circumstances outlined above in *Marchiando, supra.*]

■ Finally, in *In re Whiters,* 337 B.R. 326 (Bankr.N.D.Ind.2006), the court stated its construction of the elements of an action under 11 U.S.C. § 523(a)(6). As stated in *Whiters,* determination of cases under § 523(a)(6) has been made extraordinarily complicated by the decision of the United States Supreme Court in *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). In *Whiters,* the court stated the following as to the basic elements of an action under § 523(a)(6) following the decision in *Geiger:*

> Putting the foregoing together, the Court determines that in order to sustain an action under 11 U.S.C. § 523(a)(6) a creditor must demonstrate the following:
>
> 1. That the debtor's actions caused an "injury" to the person or property interest of the creditor.
>
> 2. That the debtor's actions which caused the injury were the result of "willful" conduct by the debtor by which the debtor intended to effect an injury to the person or property interest of the creditor.
>
> 3. That the debtor's "willful" acts were undertaken in a "malicious" manner.
>
> Viewed as outlined above, the *Geiger* standard is extremely strict for creditors to meet. That is as it should be. Exceptions to discharge are supposed to hook "bad actors", not those who merely

act poorly. When we troll the murky depths of dischargeability from our place on the shore immediately above the dam, our goal is to snare the lampreys in the stream, not the carp and the catfish. Moreover, in the context of 11 U.S.C. § 523(a)(6), as is true with any exception to discharge, the creditor must prove each element of the dischargeability action by a preponderance of the evidence—*Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991); *In re Bero,* 110 F.3d 462, 465 (7th Cir.1997), and "exceptions to discharge are to be construed strictly against a creditor and in favor of the debtor." *In re Scarlata,* 979 F.2d 521, 524 (7th Cir.1992), reh. en banc den. 1993; *In re Zarzynski,* 771 F.2d 304, 306 (7th Cir.1985).

337 B.R., at 339. This court further adopted a "subjective" standard with respect to the willfulness element of § 523(a)(6), stating:

As the emphasized portion of the above-quoted section establishes, reference to the Restatement Second of Torts does not negate a totally "subjective" standard: in order to constitute "willful" conduct, a debtor must either "desire the consequences of his act" [target harm to another entity's person or property], or himself/herself *believe* that harm is substantially certain to result from his/her actions. After *Geiger,* there is no room for the "objective" inquiry into the probabilities of harm, because to do so renders the "willful" element of § 523(a)(6) tantamount to the mere intention to act without intending the consequences of the act in relation to the injury. *Geiger* requires "you *knew* that would hurt", not "any idiot would/should have known that would hurt".

337 B.R. 326, 343. Finally, the court defined "malicious" under the statute as follows:

"Malicious" means " 'in *conscious* disregard of one's duties or without just cause or excuse; it does not require ill will or a specific intent to do harm.' " *In re Thirtyacre,* 36 F.3d 697, 700 (7th Cir.1994) (quoting *Wheeler v. Laudani,* 783 F.2d 610, 615 (6th Cir.1986)) (emphasis added). Consequently, a debtor's actions are not automatically labeled malicious simply because they are wrongful. *In re Posta,* 866 F.2d 364, 367 (10th Cir.1989). There must also be a consciousness of wrongdoing. *In re Stanley,* 66 F.3d 664, 668 (4th Cir.1995). It is this knowledge of wrongdoing, not the wrongfulness of the debtor's actions, that is the key to malicious under § 523(a)(6). *Posta,* 866 F.2d at 367; *In re Cardillo,* 39 B.R. 548, 550 (Bankr. D.Mass.1984). Without it there can be no "conscious disregard of one's duties," *Thirtyacre,* 36 F.3d at 700, only an unconscious one. *Accord, In re Grier,* 124 B.R. 229, 233 (Bankr.W.D.Tex.1991)("Simply because the sale was in violation of the security agreement and was in fact an intentional sale on the part of the debtor should not be enough to trigger a finding of malice."). *See also, Davis,* 293 U.S. at 328, 332, 55 S.Ct. at 153 (a willful and malicious injury does not automatically result from every tortious conversion).

. . .

That being said, "malicious" intent must be established as a separate element. Under this element, per *Thirtyacre, supra.,* the focus of malice is whether the debtor *"deliberately* or *intentionally"* disregarded his/her obligations with respect to the creditor's interests in the debtor's property.

326 B.R. at 349–50.

We now apply the pleading standards of Fed.R.Civ.P. 8(a), as defined by *Bell At-*

*lantic,* and Fed.R.Civ.P. 9(b) to the elements necessary to establish a base claim under § 523(a)(2), § 523(a)(4), and § 523(a)(6).

■ The format of the complaint contains 21 rhetorical paragraphs which preface the assertion of separate causes of action. Certain facts are asserted in these 21 rhetorical paragraphs which must be taken into account with respect to each of the seven counts asserted by the complaint. This is a common pleading procedure by plaintiffs. The court questions whether this pleading format complies with Fed.R.Civ.P. 8(a)(2) and Fed.R.Civ.P. 8(d)(1). This complaint also evidences a particularly obnoxious practice, which the court does not deem to comply with Fed. R.Civ.P. 8(a)(2) or 8(d)(1). The method of pleading in the amended complaint is to state a general statement (in this case rhetorical paragraphs 1–21), to then assert several counts, and in each successive count to incorporate the rhetorical paragraphs of everything that went before that count as part of that count. This is an unacceptable method of pleading: each separate count must be totally exclusive of other counts in order for the court to avoid a total waste of time in reviewing each count separately by relation to what went before.

Judged against the foregoing standards for pleading under Rule 8(a) and 9(b), the court determines the following with respect to the amended complaint:

1. ***Count I.*** Count I of the amended complaint is expressly stated to be premised upon 11 U.S.C. § 523(a)(2)(A) and upon 11 U.S.C. § 523(a)(2)(B).

■ In relation to 11 U.S.C. § 523(a)(2)(A), the elements which the complaint must assert under Rule 8(a) and must specifically plead under Rule 9(b) are set forth in the court's decision in *In re Hostetter,* 320 B.R. 674 (Bankr.N.D.Ind. 2005).[3] The court construes the amended complaint to essentially short circuit requirements for pleading under Rule 9(b), by attempting to lump multiple circumstances into a specific circumstance which is plead. Centier's theory appears to be that Young caused representations to be made at closings, or potentially at other times, which were false and which give rise to an action for exception from discharge under § 523(a)(2)(A). However, in order to satisfy the pleading requirements of Rule 9(b), *every* specific instance of fraud must be specifically pleaded, by stating "the identity of the person making the representation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated", *Schiffels v. Kemper Financial Services, Inc.,* 978 F.2d 344, 352 (7th Cir. 1992) [quoting *Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F.2d 677, 683 (7th Cir.1992) ]. Count I fails to comply with Fed.R.Civ.P. 9(b) in this manner.

■ As to assertions under 11 U.S.C. § 523(a)(2)(B), the amended complaint is even more deficient. The premise of Count I in the context of this statute appears to be that certain sworn statements alleged to have been given by Young, or at the direction of Young, caused disbursements of credit proceeds advanced by Centier to be made to Young or someone else. Reading the complaint very generously, the contention under 11 U.S.C. § 523(a)(2)(B)(ii) is that these sworn statements somehow constituted "a statement in writing ... respecting the debtor's or an insider's financial condition". As was

---

**3.** Amazingly, despite this court's absolutely clear delineation of the elements for a cause of action under 11 U.S.C. § 523(a)(2)(A) in *In re Hostetter,* neither party cited that case as a basic element of the motion to dismiss or the response to the motion to dismiss.

true with Centier's theories under § 523(a)(2)(A), the specific circumstances of submission of "statements" under § 523(a)(2)(B) have not been plead with the specificity required by Rule 9(b).

The court determines that Young's motion as to Count I should be granted.

2. *Count II.* As previously stated, Count II is premised upon the submission of documents—other than the sworn statements alleged to give rise to fraud in the original complaint. Young was not put on notice by the original complaint that any transactions apart from closing transactions were alleged to be involved in any form of fraud giving rise to harm to Centier. As a result, the assertions of Count II do not relate back to the original complaint under Fed.R.Civ.P. 15(c)(1)(B). The court determines that Young's motion to dismiss Count II must be granted, with prejudice.

3. *Count III.* Count III raises matters totally outside of the scope of the transactions which form the focus of the original complaint. The original complaint, as the court construes it, was focused solely on documents submitted at closings in order to authorize release of loan advances by Centier with respect to specific construction projects. This count asserts that the core loan transactions between Centier and Young/Young's entity were fraudulent, an assertion totally beyond the scope of that stated in the original complaint. As a result, Count III does not relate back to the filing of the original complaint; the assertions made in Count III are barred by the deadline established by 11 U.S.C. § 523(c)(1)/Fed.R.Bankr.P. 4007(c).

The court determines that Young's motion to dismiss Count III is to be granted, with prejudice.

4. *Count IV.* Count IV has been conceded by Centier to be dismissible pursuant to Young's contentions. The court determines that Count IV is to be dismissed, with prejudice.

5. *Count V.* Count V is premised upon 11 U.S.C. § 523(a)(6).[4]

■ The essential allegations of Count V are the following:

69. The Sworn Statements and other representations of Harvest Homes, the Harvest Financial Documents, the Young Financial Documents, and the embezzlement of Young all together constitute a fraudulent scheme orchestrated by Young to induce Centier into making the Harvest Loans to its detriment. Such fraudulent scheme is hereinafter referred to as "Young's Fraudulent Scheme."

70. Young's Fraudulent Scheme was a malicious scheme devised by Young and Harvest Homes to deceive Centier Bank to its detriment.

71. Young's Fraudulent Scheme was made up of willful acts on the part of Young and Harvest Homes to deceive Centier Bank to its detriment.

72. Young's Fraudulent Scheme caused injury in the form of monetary damages to be suffered by Centier.

■ Count V is an apparent attempt to assert a claim under § 523(a)(6) by the contention that conduct falling within the provisions of § 523(a)(2)(A) somehow falls within the scope of § 523(a)(6). 11 U.S.C. § 523(a)(6) is directed at acts intended to

---

4. Again, the court is amazed by the fact that neither party addressed the elements established by this court in *In re Whiters,* 337 B.R. 326 (Bankr.N.D.Ind.2006) with respect to an action under 11 U.S.C. § 523(a)(6). It is somewhat beyond the court's ken that parties can argue a motion to dismiss for failure to state a claim under Rule 12(b)(6) without at some point definitively addressing the elements of the claim which must be asserted.

cause harm to a property interest, maliciously undertaken. Based upon the amended complaint as a whole, Centier's claims are that Young, either individually or on behalf of a corporate entity, defrauded Centier. 11 U.S.C. § 523(a)(2) and 11 U.S.C. § 523(a)(6) define separate grounds for an exception to discharge. There is nothing in Count V that begins to establish a claim under 11 U.S.C. § 523(a)(6): *See, In re Whiters, supra.*

The court determines that Young's motion to dismiss Count V is to be granted.

6. **Count VI.** The essential allegations of Count VI are the following:

74. As the member and officer of Harvest Homes, Young used Harvest Homes as his alter ego, and such actions require the piercing of Harvest Homes corporate veil so that the fraudulent acts of Harvest Homes are considered the actions of Debtor and so that Young may not obtain any benefit from the corporate veil of Harvest Homes.

75. Young oversaw the operations of Harvest Homes that led to Harvest Homes having insufficient capital resources needed for the daily operations of Harvest Homes.

76. Young blurred the lines between Young and Harvest Homes by using monies belonging to Harvest Homes for Young's personal uses.

77. Young so ignored, controlled and/or manipulated the corporate form of Harvest Homes that it was merely the instrumentality of Young.

78. Young's misuse of the corporate form for Harvest Homes constituted a fraud and/or promoted injustice on Centier Bank.

79. Therefore, the corporate veil of Harvest Homes should be pierced, because it was so ignored, controlled or manipulated that it was merely the in-strumentality of Young and that the misuse of Harvest Homes' corporate form would constitute a fraud or promote injustice on Centier Bank.

As stated above, the court looks askance at the pleading conceit adopted by Centier, whereby every rhetorical paragraph that preceded Count VI is incorporated into Count VI, and the court (and Young) are left to sort out the provisions of rhetorical paragraphs 1–72 which somehow relate to the claim for relief stated in Count VI. Count VI is dismissible on this basis alone—it does not satisfy the pleading requirements of Rule 8(a).

More importantly, all rhetorical paragraphs 74–79 state is that Young individually treated Harvest Homes as his alter ego, and that he is liable for Harvest Homes' debts to Centier as a result. This count asserts no specific claim under 11 U.S.C. § 523(a). It relies in part upon fraud (rhetorical paragraph 78), and there are no specific allegations of fraud within the requirements of Rule 9(b). Apart from conclusory allegations, the assertions of Count VI do not have any concrete factual assertions satisfying the requirements of Rule 8(a). The court deems Count VI to be a "throw in". If plaintiffs choose to "throw in" counts in a complaint which do not satisfy the requirements of 11 U.S.C. § 523(c)(1)/Fed.R.Civ.P. 8(a)/Fed.R.Civ.P. 9(b), then they should be prepared to have those claims "thrown out".

There is a very basic distinction between an assertion that an individual has individually caused a corporation to commit an act which gives rise to individual liability on the part of that individual for that act, and an assertion that an individual and a corporation have so co-mingled their affairs that the individual is liable for anything that the corporation has done or for any debt that the corporation has incurred. The court cannot definitively decipher

which theory Centier seeks to assert. Count VI states only conclusory allegations, and therefore fails to satisfy the pleading requirements of Rule 8(a).

The court determines that Count VI fails to state any claim upon which relief may be granted against Young individually, and that it should be dismissed.

7. **Count VII.** Again, the totally obnoxious pleading format adopted by Centier presents its ugly head—by which 80 previous rhetorical paragraphs are incorporated into Count VII in order to seek to sustain some form of cause of action. The core averments of Count VII are the following:

82. Based on the factual allegations set forth in the previous paragraphs, Young knowingly executed a scheme to defraud Centier Bank.

83. Centier Bank is state chartered and federally insured financial institution.

84. Because Young violated Ind.Code § 35–43–5–8(a), Centier Bank is entitled to all relief set forth under Ind.Code § 34–24–3–1.

The apparent intent of Count VII is to seek to establish a claim for treble damages, attorney's fees and costs under I.C. 35–43–5–8/34–24–3–1. To the extent that Centier can state a claim within the provisions for exception to discharge under 11 U.S.C. § 523(a), it may be able to assert a claim for incidental damages arising from conduct within § 523(a) allowed by applicable state law with respect to that conduct; *Cohen v. de la Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). However, as the foregoing discussion establishes, Center has yet to adequately plead a claim under 11 U.S.C. § 523(a), and thus Count VII's prayer for relief fails to assert a claim as well.

The court determines that Count VII should be dismissed.

Next to be determined is the effect of the dismissal of the various counts of the complaint.

Fed.R.Civ.P. 12(b)(6), incorporated into contested matters by operation of Fed. R.Bankr.P. 7012(b), provides that "(e)very defense, in law or fact, to a claim for relief in any pleading ... shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted." Rather than state the Rule 12(b)(6) defense which it has raised in a responsive pleading (i.e., an answer), the defendant has exercised the option provided to it by Rule 12(b) to assert that defense in a separate motion which raises the ground of "failure to state a claim upon which relief can be granted" as a defense to the plaintiff's action. Properly understood, this defense asserts that based upon the allegations/ averments of the plaintiff's complaint, the complaint does not state any cognizable legal basis upon which any relief requested by the complaint can be granted in relation to the defendant. The court has determined previously in this decision that the defendant's motion must be sustained. However, the mere sustaining of the motion does not address whether the plaintiff is entitled to, or may be allowed by the court to, proceed subsequently in this case with respect to an attempt to assert a claim against the defendant. The granting of the Rule 12(b)(6) motion determines only that, based upon the complaint before the court, the plaintiff has failed to establish any claim upon which relief can be granted against the defendant.

The court must next determine the effect of its granting of the defendant's motion in relation to the course of further proceedings in this case, i.e., does the

granting of the motion conclusively end the litigation as to Weichman?

 It must first be noted that there is a distinction between dismissal of the complaint in response to the defendant's motion, and dismissal of the action in response to that motion. The dismissal of the complaint does not end the litigation, while dismissal of the action does. As stated in *Paganis v. Blonstein*, 3 F.3d 1067, 1070 (7th Cir.1993):

> The dismissal of a complaint does not end the litigation. *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 463 (7th Cir.1988); *Bieneman v. City of Chicago*, 838 F.2d 962, 963 (7th Cir.1988); *Benjamin*, 833 F.2d at 671; *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1111 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). "In contrast, a dismissal of the entire action ends the litigation and forces the plaintiff to choose between appealing the judgment or moving to reopen the judgment and amend the complaint pursuant to Fed. R.Civ.P. 59 or Rule 60." *Benjamin*, 833 F.2d at 671. *See also Car Carriers*, 745 F.2d at 1111. Therefore, if a judgment entry dismisses only the complaint, it is not a final judgment.

Dismissal of the *action* is a final appealable judgment, and absent a statement by the court to the contrary in the final judgment of dismissal, dismissal of the action by a final judgment entry is "on the merits", and thus a dismissal "with prejudice"; Fed.R.Bankr.P. 7041/Fed.R.Civ.P. 41(b). Thus, if the court were to dismiss the *action* without stating that dismissal was "without prejudice" in the final judgment, the action would be dismissed with prejudice and in order to file an amended complaint, the plaintiff would have to file a motion for relief from the judgment pursuant to Fed.R.Bankr.P. 9023/Fed.R.Civ.P. 59(e) or pursuant to Fed.R.Bankr.P. 9024/ Fed.R.Civ.P. 60(b); *Foster v. DeLuca*, 545 F.3d 582, 584–85 (7th Cir.2008); *Furnace v. Board of Trustees of Southern Illinois University*, 218 F.3d 666, 669 (7th Cir. 2000). The Seventh Circuit Court of Appeals is not quite clear on the implication of dismissing a *complaint* with prejudice, but it suffices to say that such a dismissal would in all probability be construed as a dismissal of the *action* as well; *See, Paganis, supra.*

The United States Court of Appeals for the Seventh Circuit has dropped "heavy hints" over the years as to whether or not a complaint or action should be dismissed with prejudice in response to a defendant's initial Rule 12(b)(6) motion to dismiss the original complaint. In *Redfield v. Continental Casualty Corp.*, 818 F.2d 596, 609– 610 (7th Cir.1987); *Rehearing & Rehearing En Banc denied* July 8, 1987; the United States Court of Appeals for the Seventh Circuit stated:

> It is true that plaintiffs' amended complaint failed to allege that Anthony Cairo was the sole beneficiary under the Chicago Title land trusts, although that fact could be reasonably inferred from the insurance contracts attached to the complaint. Nevertheless, this failure was at most a technical defect which in no way warranted a dismissal with prejudice. See *Rainbow Trucking, Inc. v. Ennia Ins. Co.*, 500 F.Supp. 96, 98 (E.D.Pa.1980) (failure to allege insurable interest did not render complaint fatally defective). In *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80, the Supreme Court set out the general policy of the federal courts favoring liberal construction of pleadings. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the

purpose of pleading is to facilitate a proper decision on the merits." *Id.* at 48, 78 S.Ct. at 103. Professors Wright and Miller have similarly commented:

A dismissal under Rule 12(b)(6) generally is not on the merits and the court normally will give plaintiff leave to file an amended complaint. The federal policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that plaintiff be given every opportunity to cure a formal defect in his pleading. * * * Amendment should be refused only if it appears to a certainty that plaintiff cannot state a claim. 5 Wright & Miller, Federal Practice & Procedure § 1357, at 611–613. See also *Musikiwamba v. ESSI, Inc.,* 760 F.2d 740, 753 (7th Cir.1985); *Friedlander v. Nims,* 755 F.2d 810, 813 (11th Cir.1985); *Micklus v. Greer,* 705 F.2d 314, 317 n. 3 (8th Cir.1983); *Jureczki v. City of Seabrook,* 668 F.2d 851, 854 (5th Cir.1982) (dismissal with prejudice is a drastic remedy to be used only where a lesser sanction would not better serve the interests of justice). Although we think that requiring plaintiff Redfield at this point to amend the complaint to include the above allegation would be of limited usefulness, because of our disposition in Part IV *infra,* Redfield on remand should be given leave to amend the amended complaint to include an allegation setting out Cairo's interest in the Chicago Title & Trust land trusts. (footnote omitted)

As stated in *Foster v. DeLuca,* 545 F.3d 582, 584 (7th Cir.2008):

Relief under Rules 59(e) and 60(b) are extraordinary remedies reserved for the exceptional case, *Dickerson v. Board of Education of Ford Heights, Ill.,* 32 F.3d 1114, 1116 (7th Cir.1994), and "the mere desire to expand the allegations of a dismissed complaint does not, by itself, normally merit lifting the judgment." *Camp,* 67 F.3d at 1290. Yet the district court left the plaintiff with little recourse but to file a motion under Rules 59(e) and 60(b) because it simultaneously granted the defendants' motion to dismiss and terminated the case. *District courts routinely do not terminate a case at the same time that they grant a defendant's motion to dismiss; rather, they generally dismiss the plaintiff's complaint without prejudice and give the plaintiff at least one opportunity to amend her complaint. See generally Furnace v. Bd. of Trs., 218 F.3d 666, 669 (7th Cir.2000)* (noting that "while this court has not accorded talismanic importance to the fact that a complaint ... was dismissed 'without prejudice,' generally, an order dismissing a complaint without prejudice 'is not appealable because the plaintiff may file an amended complaint.' ") (internal citations and quotations omitted); *see also Kaplan v. Shure Bros.,* 153 F.3d 413, 417 (7th Cir. 1998) (same); *Farrand v. Lutheran Bhd.,* 993 F.2d 1253, 1254 (7th Cir.1993) (same). (emphasis supplied)

*See, Health Cost Controls v. Skinner,* 44 F.3d 535 (7th Cir.1995).

From the foregoing, it is clear to the court that the United States Court of Appeals for the Seventh Circuit has assumed that trial judges granting a motion to dismiss pursuant to Rule 12(b)(6) will in most instances accord a plaintiff the opportunity to amend a complaint which fails to state a claim upon which relief can be granted, before entering a final judgment of dismissal with prejudice of the action sought to be asserted by the plaintiff against the defendant by that complaint.

The circumstances under which a federal trial court is *required* to provide the

plaintiff with an opportunity to amend a complaint dismissed pursuant to Rule 12(b)(6) has never been addressed by the United States Court of Appeals for the Seventh Circuit. This issue has had only scant direct determination by other courts. Based upon the court's research, the most active court in the context of this narrow issue is the United States Court of Appeals for the Eleventh Circuit, which has an interesting history with respect to the issue. In *Bank v. Pitt,* 928 F.2d 1108, 1111–1112 (11th Cir.1991), the following was stated:

> A complaint should not be dismissed under Fed.R.Civ.P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). "[A] district court's discretion to dismiss a complaint without leave to amend is 'severely restrict[ed]' by Fed.R.Civ.P. 15(a), which directs that leave to amend 'shall be freely given when justice so requires.' " *Thomas v. Town of Davie,* 847 F.2d 771, 773 (11th Cir.1988) (quoting *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 597 (Former 5th Cir.1981)). Where it appears a more carefully drafted complaint might state a claim upon which relief can be granted, we have held that a district court should give a plaintiff an opportunity to amend his complaint instead of dismissing it. *See Friedlander v. Nims,* 755 F.2d 810, 813 (11th Cir.1985); *Dussouy,* 660 F.2d at 597–99 [FN4] This is still true where the plaintiff does not seek leave until after the district court renders final judgment, *see Thomas,* 847 F.2d at 773 (after district court dismissed plaintiff's complaint with prejudice, plaintiff filed motion for reconsideration that was denied; this court reversed and remanded, directing that plaintiff be permitted to amend his complaint), and even where the plaintiff never seeks leave to amend in the district court, but instead appeals the district court's dismissal, *see Sarter v. Mays,* 491 F.2d 675, 676 (5th Cir.1974) (complaint dismissed with prejudice and plaintiff appealed; court of appeals stated that "if the complaint does not adequately apprise the defendant of the nature of the plaintiff's claim, the court should allow the plaintiff to amend the pleadings to more plainly delineate the cause of action rather than dismiss the complaint.").[FN5]

---

FN4. *Dussouy* is a Former Fifth Circuit case decided in November 1981. The Eleventh Circuit has never decided whether Former Fifth Circuit cases decided after September 30, 1981, are binding precedent. In dicta, however, we have indicated that such cases are binding precedent. *See Tallahassee Branch of NAACP v. Leon County,* 827 F.2d 1436, 1440 n. 1, *cert. denied,* 488 U.S. 960, 109 S.Ct. 402, 102 L.Ed.2d 391 (1988); *Stein v. Reynolds Sec., Inc.,* 667 F.2d 33, 34 (11th Cir.1982). One commentator has reached the same conclusion. *See* Baker, *A Primer on Precedent in the Eleventh Circuit,* 33 Mercer L.Rev. 1175 (1983). We treat *Dussouy* as binding, but note that our decision would be unaffected even if the case is not binding.

FN5. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

If our precedent leaves any doubt regarding the rule to be applied in this circuit, we now dispel that doubt by restating the rule. Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.[FN6]

---

FN6. We note that the rule that a plaintiff be given at least one chance to amend his complaint before the district court dismisses it with prejudice is consistent with the Feder-

al Rules' fundamental goal that disputes be resolved on the merits, rather than on the pleadings. Under the Federal Rules, "the purpose of pleading is to facilitate a proper decision on the merits." *Conley,* 355 U.S. at 48, 78 S.Ct. at 103. Dismissing an action without granting even one chance to amend is contrary to this goal.

We note two important caveats to this rule. First, where the plaintiff has indicated that he does not wish to amend his complaint, the district court need not dismiss with leave to amend. In *Friedlander v. Nims,* 755 F.2d 810 (11th Cir. 1985), during a hearing the district judge indicated several times to plaintiff's counsel that the complaint was deficient with regard to one defendant and recommended appropriate changes. Although counsel agreed with the judge that the complaint was deficient, and expressed an intent to amend it, he nevertheless failed to do so. In this situation, where the district court has a clear indication that the plaintiff does not want to amend his complaint, the court may properly dismiss without leave to amend. The second caveat to the rule is that if a more carefully drafted complaint could not state a claim under the standard of *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 102, dismissal with prejudice is proper.

In *Bank,* the United States Court of Appeals for the Eleventh Circuit adopted a relatively bright line standard for trial courts with respect to when dismissal pursuant to Rule 12(b)(6) should be automatically accompanied by an opportunity for the plaintiff to file an amended complaint. However, this standard was overruled by the United States Court of Appeals for the Eleventh Circuit in *Wagner v. Daewoo Heavy Industries America Corp.,* 314 F.3d 541, 542 (11th Cir.2002):

In this en banc opinion, we address whether this case should be remanded to the district court with instructions to permit the plaintiff to amend his complaint. Under *Bank,* we would answer that question in the affirmative. 928 F.2d at 1112 ("Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice."). We, however, have determined that the *Bank* rule should no longer be followed. As a result, we overrule *Bank* and substitute the following rule: A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.

In announcing its new rule, the Court stated that the new rule was in consonance with other Circuit Courts of Appeal which had addressed the issue, including the United States Court of Appeals for the Seventh Circuit in *Cohen v. Illinois Institute of Technology,* 581 F.2d 658, 662 (7th Cir.1978). Apart from the fact that pronouncements of the Eleventh Circuit Court of Appeals have no compelling effect on this court, the court does not read the cited Seventh Circuit case as having anything to do with the issue addressed in *Wagner,* and thus the statement of the United States Court of Appeals for the Eleventh Circuit as to the law of the United States Court of Appeals for the Seventh Circuit, as expressed in that case, carries no weight whatsoever with this court. This court thus does not deem the law of the United States Court of Appeals for the Seventh Circuit to be in consonance with the decision announced in *Wagner, supra.*

■ Thus, an unanswered question in the Seventh Circuit is the extent to which a federal trial court must accord a plaintiff an opportunity to file an amended complaint when the court determines that a

Rule 12(b)(6) motion to dismiss the plaintiff's original complaint should be granted. The court deems the law of the Seventh Circuit to clearly state that in most instances, federal trial courts should grant the plaintiff an opportunity to file an amended complaint before either the complaint or the action is dismissed with prejudice in response to a Rule 12(b)(6) motion. Absent any controlling precedent to the contrary in the Seventh Circuit, the court is free to adopt a rule on its own which the court deems to be in consonance with pronouncements of the United States Court of Appeals for the Seventh Circuit. As stated, the court does not deem the United States Court of Appeals for the Seventh Circuit to be in parallel with the rule announced by the United States Court of Appeals for the Eleventh Circuit in *Wagner v. Daewoo Heavy Industries America Corp., supra.* Rather, this court views the United States Court of Appeals for the Seventh Circuit to be more in consonance with the rule announced by the United States Court of Appeals for the Eleventh Circuit in *Bank v. Pitt, supra.*, and it is that rule which the court adopts. Thus, when the court has determined that a Rule 12(b)(6) motion should be granted with respect to a complaint, the court will provide the plaintiff with one chance to file an amended complaint before the case or complaint is dismissed with prejudice, if "a more carefully drafted complaint might state a claim". This rule is subject to two exceptions. First, in a circumstance in which the plaintiff has stated conclusively on the record that he/she/it does not desire in any context to file an amended complaint, no leave to amend will be granted. Secondly, if a more carefully drafted complaint in the court's view could not state a claim for relief under the standards for

review of a Rule 12(b)(6) motion stated in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the court may dismiss the action with prejudice without providing leave to file an amended complaint. The review in this context is limited to the record in which the complaint was filed, and does not encompass any extraneous matters otherwise known by the court.

The court determines as follows regarding the plaintiff's opportunity to amend the complaint:

1. Count I may state a claim under 11 U.S.C. § 523(a)(2) if more carefully drafted in conformity with Rule 9(b), including specificity as to each alleged instance of fraud. This count is dismissed without prejudice.

2. Count V doesn't begin to assert a claim under 11 U.S.C. § 523(a)(6), and nothing is going to save it. Count V is dismissed with prejudice.

3. Count VI may state a claim if more carefully drafted in conformity with Rules 8(a) and 9(b). This count is dismissed without prejudice.[5]

4. Depending upon the nature of claims properly asserted under Count I, Count VII could be redone in a manner which states a claim. Count VII is dismissed without prejudice.

IT IS ORDERED, ADJUDGED AND DECREED as follows:

1. Count I is dismissed without prejudice.

2. Count II is dismissed with prejudice.

3. Count III is dismissed with prejudice.

4. Count IV is dismissed with prejudice.

5. Count V is dismissed with prejudice.

---

**5.** The court notes that success on this count will do nothing more than establish a debt of Young to Centier—there will be no effect on 11 U.S.C. § 362(a).

6. Count VI is dismissed without prejudice.

7. Count VII is dismissed without prejudice.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Centier shall file an amended complaint—limited to matters sought to be asserted in Counts I, VI and VII—by **February 18, 2010.**